STIGER *vs.* MAHONE and others.

1. A conveyance of land was made, subject to two mortgages, payment of which was expressed in the deed to be assumed by the grantee. In a suit to foreclose the prior mortgage, the holder of the second mortgage was a party defendant, and the decree directed the amount of the second mortgage to be raised and paid. At the sheriff's sale under execution, the grantee and owner of the equity of redemption bought the lands in for a trifle more than the sum due on the prior mortgage, leaving a large deficit on the second. Suit is now brought to re-establish and foreclose the second mortgage. The evidence taken in this suit showed that sale to have been in the absence of the second holder, and with the purpose of discharging the lands of the second mortgage without payment of it in full. *Held,* that in equity the effect of the purchase and sheriff's deed

Stiger *v.* Mahone.

was to pay off the prior mortgage, and to make the second mortgage a first lien for the unpaid amount of it.

2. The assumption by the grantee, in the conveyance, of the mortgage debt, makes the grantee personally liable in equity to the holder of the mortgage, and the insolvency of the obligor in the bond need not be charged or proved to warrant, in the foreclosure suit, a decree for payment of the deficiency after sale of the lands.

---

December 14th, 1870, William H. Weeks conveyed to Edward F. Mahone, certain mill premises in Middlesex, of about seven and a half acres, for $10,000. The deed contained the following stipulations, viz.: "Subject, nevertheless, to two certain mortgages on the said premises, amounting to $9500 which mortgages the party of the second part hereby assumes, and agrees to pay, together with the interest thereon."

The only mortgages on the premises were two: first a mortgage to Simeon W. Phillips, dated February 10th, 1870, for $5000, and second, a mortgage made by Weeks, to secure his bond, dated May 10th, 1870, held by Jacob M. Stiger, for $4500.

March 3d, 1871, Mahone conveyed the premises to Anthony W. Dimock, for $30,000, and the deed contained exactly the same stipulation as above, in regard to the mortgages.

July 1st, 1871, Anthony W. Dimock conveyed the premises to Abraham H. Schenck for $20,000, with the following in the deed: "Subject to two mortgages upon the said property, one for $5000, and the other for $4500, which mortgages, amounting together to $9500, said party of the second part assumes as part of the said consideration."

July 17th, 1871, Phillips, the holder of the first mortgage, filed his bill to foreclose, Stiger being one of the parties defendant. Schenck's deed was not on record, and he was not made a party.

February 14th, 1872, a decree was obtained, and execution, issued to the sheriff to raise, first, $5714.42 and costs for Phillips, and second, $5054.70 for Stiger.

May 16th, 1872, the premises were struck off by the sheriff, to Schenck, for $6100, and after paying the amount

due to Phillips, and the costs of the sheriff, there was left $62.50 for Stiger.

This suit is by Stiger, to enforce his mortgage lien against the premises, and for a decree against Mahone, Dimock and Schenck, personally, for whatever of Stiger's mortgage debt cannot be made out of the premises. The bill charges that Dimock and Phillips colluded for the purpose of having the premises sold under foreclosure, and of buying them in, discharged from Stiger's mortgage; and that the foreclosure proceedings were so taken and carried on, by the consent and for the benefit of Dimock and Schenck, and that the purchase at the sheriff's sale, and the payment to the sheriff of the consideration money, amounted in equity only to payment and satisfaction of the amount due to Phillips on his mortgage, and to payment of $62.50 on account of the amount decreed to Stiger on his mortgage and costs. The bill also charges that, by virtue of the several stipulations in the deeds as aforesaid, Mahone, Dimock and Schenck are severally liable in equity to pay the amount of principal and interest on Stiger's mortgage, and that notwithstanding the foreclosure proceedings, and the pretended sale and conveyance thereunder, the premises are still subject to the lien of this mortgage. It prays answers not under oath.

Separate answers were filed by Dimock and Schenck, and testimony taken for the complainant; none for the defence.

*Mr. Pitney,* for complainant.

*Mr. Magie,* for defendant.

THE VICE-CHANCELLOR.

It is quite clear from the evidence in this case, that the sale of the mortgaged premises was brought about by contrivance and design on the part of Dimock and Schenck, and that their object was to buy the premises in, discharged of Stiger's mortgage. This, I think, cannot reasonably be doubted. It is also quite clear that Schenck was acting as

Dimock's agent or coadjutor in the matter, and that the sale was urged on by Schenck, when Stiger was not present and did not expect it to take place because of certain negotiations between him and Dimock for a payment of $3000 on the decree, and an extension of the time of payment of the balance. Schenck was at the sale, and though Phillips was willing to have it adjourned, as a friend of Stiger, who was present, urgently requested, yet Schenck insisted on the sale proceeding, and bought the property in. The whole proceeding is plainly indefensible, and the ground taken in the bill is good, that the $6100 paid by Schenck amounted to only so much paid on the mortgages and costs of foreclosure. He was the owner of the equity of redemption before the sale, and he stood in no better position afterwards. The transaction resulted in extinguishing the mortgage of Phillips and making Stiger's mortgage the first lien; a result not contemplated by the defendants, but the only one consistent with right and with the settled doctrine of equity. This doctrine is applied in many cases. It is well expressed and enforced, in *Hilton* v. *Bissell*, 1 *Sandf. Ch.* 409. There B. had purchased land, subject to two mortgages, the payment of which he assumed. The junior mortgage belonged to H. B. neglected to pay the interest on the senior mortgage, and it was foreclosed against B., H., and others. B. purchased the land at the master's sale under the decree, and received a deed. There was no surplus. On a bill by H. against B. to foreclose the junior mortgage, it was held that the decree and sale were no bar to the suit. In equity, B.'s bid and purchase was held in favor of H., to be a payment and extinguishment of the prior mortgage, leaving the land subject to the junior lien. The court said, that B. was bound by his covenant to satisfy the second mortgage, and could not be permitted so to do it, so as to defeat the benefit intended to be secured by his covenant, and thereby take advantage of his own wrong ; and that equity, disregarding the forms of title which B. had acquired, would consider him

as the owner of the land, subject to H.'s mortgage, and discharged of the mortgage to G.

The complainant, Stiger, is entitled to a decree of foreclosure of his mortgage thus equitably re-established, and to have the land sold to pay the amount due on it for principal, interest and costs.

The premises appear, by the evidence, to be abundantly sufficient to pay such amount, but if a deficiency should be found to exist, the defendants will be personally liable to make it good, in fulfillment of the several and respective covenants contained in the deeds. The rule in respect to the equitable obligations arising against grantees, from stipulations of this description in deeds, was laid down in *Klapworth* v. *Dressler,* 2 *Beas.* 62. Where a grantee in a deed covenants with the grantor to pay off an encumbrance subsisting on the premises, if the grantor is personally liable for the payment of the encumbrance, the grantee, by virtue of the agreement, is regarded in equity as the principal debtor, and the grantor as a surety only. The Klapworth case was decided before the statute of 1866, which expressly authorizes decrees in foreclosure suits for the payment by the parties liable at law or in equity for any deficiency after sale of the land, and the decision in that case had a special basis in the fact there alleged and established, that the obligor in the bond was insolvent. The insolvency of Weeks, the obligor here, is not proved, but it is not necessary to appear, since the above mentioned statute, in order to sustain the decree. The statute is applicable to foreclosure suits, and this suit being one to set up the mortgage and foreclose it, is within the statutory letter and spirit. It was objected at the hearing, that Weeks not being a party defendant, a decree could not be made for payment of a possible deficiency. I am unable to see how he can be considered a *necessary* party, if he might have been a proper one. Such an objection, taken at the hearing and not by the pleadings, or at an earlier stage of the cause, will not prevail if the requisite parties are before the court to enable it to finally dispose of the case.

I see no difficulty on this point. Nor is the objection good, that the mortgages, the payment of which was assumed in the deeds, were not sufficiently designated or described. They were the only mortgages on the premises, and answered respectively and together to the amounts mentioned in the covenants.

I shall advise that the complainant is entitled to the relief prayed for in the bill.